IN RE H&R BLOCK SECURITIES )
LITIGATION ) Case No. 06-0236-CV-W-ODS
)

ORDER AND OPINION GRANTING DEFENDANTS' MOTION TO DISMISS

Pending is Defendants' Motion to Dismiss Consolidated Class Action Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure (Doc. # 88). For the following reasons, the motion is GRANTED.

**I. Background**

The above-captioned action was brought in the form of a class action against Defendant H&R Block, Inc. ("Block" or the "Company") and Defendants Mark A. Ernst, Jeffery W. Yabuki, and William L. Trubeck (the "Individual Defendants" and, together with Block, the "Defendants") by purchasers of H&R Block publicly traded securities seeking damages for violations of the Securities and Exchange Act of 1934. Block, a Kansas City, Missouri-based corporation, delivers tax, investment, mortgage and business services and products. Its Tax Services segment provides income tax return preparation and other services and products related to tax return preparation for the general U.S. public and offers investment services and securities products through H&R Block Financial Advisors, Inc. Compl. ¶ 4.[1]

In the Consolidated Complaint ("Complaint"), Lead Plaintiff Horizon Asset Management Inc. ("Plaintiff") alleges that between February 24, 2004, and March 14, 2006 (the "Class Period"), Defendants violated sections 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 of the Securities Exchange Commission. The Complaint also alleges the Individual Defendants, officers and directors of the Company, were "controlling persons" under section 20(a) of the 1934 Act, and are therefore derivatively liable for the Company's fraudulent acts. Compl. ¶ 1.

---

[1] "Compl." refers to the Consolidated Class Action Complaint.

The Complaint alleges that Defendants misled the Company's public investors by disseminating a series of materially false and misleading statements concerning the Company's revenues, earnings, profitability, and financial condition. More specifically, the Company failed to disclose: (1) the Company falsely attributed its success to legitimate business practices when, in fact, it engaged in deceptive consumer practices by offering such programs as the (i) Express IRA plan ("X-IRA") and (ii) the Refund Anticipation Loans ("RAL") program; (2) the Company derived substantial revenue from these improper practices, thereby artificially inflating its reported earnings; (3) the Company improperly accounted for its effective income tax rate requiring a restatement of reported financial results (the "Restatement"); and (4) the Company lacked a system of safeguards and procedural controls such that investors could rely upon its reported and announced financial statements and results of operations; and (5) as a consequence of the foregoing, the Company's financial results were materially overstated at all relevant times. Compl. ¶ 2.

Plaintiff contends the truth was revealed in early 2006 upon the happening of three events: (1) on February 15, 2006, the Attorney General of California announced a lawsuit against the Company, alleging the Company marketed its RAL product in violation of California law; (2) on March 15, 2006, the Attorney General of New York announced a lawsuit against the Company targeting the X-IRA product; and (3) on February 23, 2006, the Company announced it would be restating more than two years' worth of financial statements due to errors in determining the Company's state effective income tax rate. Plaintiff alleges that these disclosures resulted in a significant reduction in the value of the Company's shares, causing a loss to investors. Compl. ¶¶ 119-126. On June 8, 2007, Defendants filed a Motion to Dismiss the Consolidated Complaint, contending Plaintiff has failed to state a claim upon which relief may be granted.

## II. Standard

A motion to dismiss for failure to state a claim should be granted when it appears that "the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief." Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In ruling on a motion to dismiss, the Court is required to view the facts alleged in the complaint in the light most favorable to the plaintiff.

The Court is limited to a review of the complaint; the only items outside the complaint that may be considered without converting the motion to one seeking relief pursuant to Rule 56 of the Federal Rules of Civil Procedure are (1) exhibits attached to the complaint, and (2) materials necessarily embraced by the complaint. Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698 (8th Cir. 2003).

The Private Securities Litigation Reform Act of 1995 ("PSLRA") "dictates a modified analysis due to its special heightened pleading rules." Kushner v. Beverly Enter., Inc., 317 F.3d 820, 824 (8th Cir. 2003). The purpose of the heightened pleading standard was set forth to eliminate abusive securities litigation and put an end to the practice of pleading "fraud by hindsight." In re Vantive Corp. Secs. Litig., 283 F.3d 1079, 1084-85 (9th Cir. 2002). The PSLRA requires plaintiffs "to specify each misleading statement or omission and specify why the statement or omission was misleading." Id. at 326 (citing 15 U.S.C. § 78u-4(b)(1)). The complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); see also Kushner, 317 F.3d at 826 (citation omitted). Finally, the court must "disregard 'catch-all' or 'blanket' assertions that do not live up to the particularity requirements." Id. at 824 (quoting Florida State Bd. of Admin. v. Green Tree Fin. Corp., 270 F.3d 645, 660 (8th Cir. 2001)).

### III. Discussion

*(1) Section 10(b) of the Securities Exchange Act*

To allege a cause of action involving publicly traded securities and purchases under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 of the Securities Exchange Commission the following elements must be established: (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 341-42 (2005); 15 U.S.C. §§ 78j(b) and

3

78t; 17 C.F.R. § 240.10b-5. Defendants contend that Plaintiff has failed to state a claim upon which relief can be granted by not meeting the heightened pleading requirements of falsity and scienter and by failing to adequately plead causation.

### A. Material Omission

"A fact is deemed material if there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as substantially altering the mix of information available to the investor." Gebhardt v. Conagra Foods, Inc., 335 F.3d 824, 829 (8th Cir. 2003) (citing Parnes v. Gateway 2000, Inc., 122 F.3d 539, 546 (8th Cir. 1997)). The question of whether a fact is material depends on the company's particular circumstances. Id. The court must look at the information from a reasonable investor's perspective at the time of the alleged misrepresentation, not from the reasonable investor's perspective looking back at how the events unfolded. Id. at 831. Furthermore, in order to take the question of materiality away from a jury, "the circumstances must make it obvious why a reasonable investor would not be concerned about the facts misrepresented." Id. at 830 (emphasis added).

Additionally, "[b]efore liability for non-disclosure can attach, the defendant must have violated an affirmative duty of disclosure." In re Sofamor Danek Group, Inc., 123 F.3d 394, 400 (6th Cir. 1997). A company is not required to predict and publish the possibility that a product may lose profitability in the future. Id. at 402. There is only a duty to disclose "a belief as to the legality of the company's own actions" if the company has "actual knowledge of wrongdoing." Kushner, 317 F.3d at 831. "[E]ven absent a duty to speak, a party who voluntarily discloses material facts in connection with securities transactions assumes a duty to speak fully and truthfully on those subjects." Helwig v. Vencor, Inc., 251 F.3d 540, 561 (6th Cir. 2001).

#### 1. The RAL Program

Plaintiff alleges the Company made a material omission when it failed to tell the market that its RAL program was unlawful and that the current revenue derived from the

4

program may cease. Compl. ¶ 61. Plaintiff contends the Company had a duty to disclose the illegality of its RAL program because it expressly stated in public filings that "[the program] is regularly reviewed both from a business perspective and to ensure compliance with applicable state and federal laws. It is [H&R Block's] intention to continue to offer the RAL program in the foreseeable future." Compl. ¶ 101. Plaintiff argues the Company's "omission" of the actual illegality of the program is material because Block's representation allowed investors to believe that "(a) the program was legal; (b) Block 'regularly' re-evaluated its legality; and (c) it did not anticipate any existing challenges to its legality (i.e., lawsuits) would be sustained." Opp'n at 21-22.[2] However, the mix of information available to investors includes the Company's multiple disclosures regarding pending RAL litigation. For example, the Company's July 2, 2004 10-K stated

> Plaintiffs in the RAL cases have alleged, among other things, that disclosures in the RAL applications were inadequate, misleading and untimely; that RAL interest rates were usurious and unconscionable; that we did not disclose that we would receive part of the finance charges paid by the customer for such loans; breach of state laws on credit service organizations; breach of contract; unjust enrichment; unfair and deceptive acts or practices; violations of [RICO]; violations of the Fair Debt Collection Practices Act; and that we owe, and breached, a fiduciary duty to [our] customers in connection with the RAL program.

Defendants' Ex. E at 11.

Further, the details of the pending litigation were available to the public in the form of various court filings in those cases. The Company also warned investors that the litigation posed a significant financial risk, even though it believed it had viable defenses. Defendants' Ex. D at 36. In light of all the information on the market regarding the Company's potential liability, any omission by the Company in failing to disclose its own alleged belief as to the illegality of the RAL is immaterial. In other words, had the Company divulged its alleged knowledge of the program's illegality and unsustainability, the mix of information available to the reasonable investor would not

---

[2] "Opp'n" refers to Lead Plaintiff's Suggestions in Opposition to Defendants' Motion to Dismiss the Consolidated Class Action Complaint.

have been substantially altered. Plaintiff has failed to adequately plead a material omission by Defendants.³

### 2. Express-IRA ("X-IRA")

Plaintiff's allegations surrounding the Company's X-IRA product are substantially the same as those pertaining to the RAL program. Compl. ¶ 61. Plaintiff again asserts that the Company knew that its X-IRA product was unlawful, yet failed to inform investors of its illegality while continuing to report revenue from the product that it knew was unsustainable. Again, there is only a duty to disclose "a belief as to the legality of the company's own actions" if the company has "actual knowledge of wrongdoing." Kushner, 317 F.3d at 831. The Company's actual knowledge regarding the illegality of the X-IRA is discussed in Part B.2. below. Second, Defendants argue that, assuming the Company knew the X-IRA was unlawful, its failure to divulge this belief was immaterial because the Company repeatedly disclosed to investors in SEC filings during the Class Period that it was defending against various claims and lawsuits (including lawsuits pertaining specifically to the X-IRA product), that the amounts sought were substantial, and that the litigation could have a negative impact on the Company's financials. However, the disclosure of the litigation risk surrounding the X-IRA, when compared to that of the RAL program, was much more boilerplate, as it was contained within a catch-all litigation risk section of the Company's SEC filings. However, the Court need not reach the question of the materiality of the alleged omission because Plaintiff has failed to adequately plead scienter, as discussed below.

### 3. Restatement

Plaintiff alleges the Company committed securities fraud when it misstated its financial results in certain periods prior to 2006. Compl. ¶¶ 94-96. The falsity of the Company's financial reports was revealed, Plaintiff alleges, on February 23, 2006, when

---

³ Because the Court holds Plaintiff has failed to state a securities fraud claim, it is unnecessary for the Court to reach Defendants' argument that Plaintiff's RAL claim is time-barred.

6

the Company restated its financials statements for the year ended June 30, 2004, the year ended June 30, 2005, and the quarterly periods for fiscal year 2006.  The need for the Restatement was premised upon material weaknesses related to the corporate tax accounting function, resulting in errors in determining the Company's state effective income tax rate.  These errors caused a cumulative understatement of the Company's state income tax liability.  Plaintiff has adequately pled that the financial statements preceding the announced Restatement were false.  In re Atlas Air Worldwide Holdings, Inc. Sec. Litig., 324 F.Supp.2d 474, 486-87 (S.D.N.Y. 2004) ("Although a restatement is not an admission of wrongdoing, the mere fact that financial results were restated is sufficient basis for pleading that those statements were false when made.").

Defendants argue, however, that even if the financial statements were false when made, any falsity was immaterial, because beginning in July 2004, the Company had repeatedly warned investors of the presence of weaknesses in the Company's internal controls and its efforts to remediate them.  Even if the Company's warnings were specific and concrete, the Court is hesitant to hold that these warnings could somehow make false financial statements covering over two years immaterial to investors.  See In re BankAmerica Corp. Sec. Litig., 78 F.Supp.2d 976, 997 n.10 (E.D. Mo. 1999) (stating that cautionary statements can only protect defendants from liability for inaccurate projections not for false pre-existing facts).  Regardless, it is not necessary to reach the question of materiality because Plaintiff must also adequately allege the Defendants' scienter in making the false financial statements, a pleading hurdle Plaintiff does not clear, as discussed below.

## B. Scienter

Defendants also contend that Plaintiffs' Consolidated Complaint fails to plead facts giving rise to a strong inference of scienter.  The recent Supreme Court case, Tellabs, Inc. v. Makor Issues & Rights, Ltd., clarified the "exacting" requirement of pleading scienter.  127 S. Ct. 2499, 2504 (2007).  The Court stated "[i]t does not suffice that a reasonable factfinder plausibly could infer from the complaint's allegations the requisite state of mind." Id.  Rather, under the PSLRA, a court evaluating inferences of

7

scienter must compare "not only inferences urged by the plaintiff," but also competing inferences that can be rationally drawn. Id. Thus, even a plausible inference of fraudulent intent will not survive a motion to dismiss if it is less convincing than other nonfraudulent explanations for the defendant's acts. Id. Thus, to meet the "strong inference" standard, "an inference of scienter must be more than merely plausible or reasonable–it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Id. at 2504-05. The standard clarified in Tellabs is not significantly different than preexisting Eighth Circuit case law. See Elam v. Neidorff, 2007 WL 1880747 at *4 (E.D. Mo. June 29, 2007). For example, in Green Tree, the court cited the strictest of the competing standards, requiring an inference of scienter to be the "most plausible of competing inferences," 270 F.3d at 661, though this heightened standard was not specifically adopted as Eighth Circuit law. See In re K-tel Intern., Inc. Sec. Litig., 300 F.3d 881, 889 n.6 (8th Cir. 2002). Therefore, while the Court must be mindful of Tellabs, prior Eighth Circuit cases may still be relied upon.

In Kushner, the Eighth Circuit approvingly noted that other circuits have found that scienter was sufficiently pled where the complaint alleges that the defendants (1) knew facts or had access to information that suggested their public statements were not accurate; (2) engaged in deliberately illegal behavior; (3) benefitted in a concrete personal way from the alleged fraud; or (4) failed to verify information they had a duty to monitor. 317 F.2d at 827 (citing Novak v. Kasaks, 216 F.3d 300, 311 (2d Cir.), cert. denied, 531 U.S. 1012 (2000)).

Scienter is not demonstrated by negligent conduct, but it may be demonstrated by recklessness. Recklessness consists of "unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." Green Tree, 270 F.3d at 654 (quotation omitted). Violations of GAAP combined with corresponding evidence of fraudulent intent may be sufficient. Ferris, Baker Watts, Inc. v. Ernst & Young, LLP, 395 F.3d 851, 855 (8th Cir. 2005). Additionally, "recklessness is shown where alleged facts

8

demonstrate that the defendants failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud." Kushner, 317 F.3d at 828 (8th Cir. 2003).

### 1. RAL Program

Plaintiff argues that it has adequately alleged scienter by stating the Company "already knew that its RAL practices were improper" when it told investors that it regularly reviewed the program to ensure its legality and that it intended to continue the program. Opp'n at 23. However, Plaintiff does not state with particularity facts demonstrating how the Company knew or believed the RAL product was unlawful when it made this statement. Plaintiff points to the Company's post-Class Period remedial measures relating to the RAL program as evidence of scienter during the Class Period. However, this conduct only creates an inference that the Company decided it needed to improve a bad product, not that the Company had been purposefully hiding the fact that its product was actually unlawful. Plaintiff's attempt to plead "fraud by hindsight" is not sufficient under the PSLRA. See K-Tel, 300 F.3d at 891. As the Eighth Circuit stated in Kushner, "[a]bsent a clear allegation that the defendants knew of the scheme and its illegal nature at the time they stated the belief that the company was in compliance with the law, there is nothing further to disclose. The fact that a defendant's belief or opinion later prove[s] to be wrong in hindsight does not render the statements untrue when made." (quotations omitted). 317 F.3d at 831.

### 2. X-IRA

Plaintiff's allegations of scienter regarding the X-IRA are also insufficient because Plaintiff again has not adequately alleged the Company knew the product was unlawful while it was reporting unsustainable revenue from the product. Plaintiff points to one email exchange between a district manager and Individual Defendant Ernst. The district manager told Ernst "I really do not think the maintenance fees should exceed the amount of interest that we are paying on these accounts. Clients won't be happy seeing [their] investments decreasing and not increasing." Compl. ¶ 129. Ernst received the email and forwarded it on stating, "The attached note . . ., reflects the general sense

that I think exists–that Express IRA is the right thing for our clients, but the product is designed to nickel and dime clients to the point where our field people [don't] feel as good about the product as they should . . ." Id. Rather than establishing a strong inference of fraudulent intent by demonstrating knowledge of the illegality of the X-IRA, this email exchange shows that the Company believed the X-IRA product was priced inappropriately.

Moreover, Plaintiff is attempting to show the Company knew something that is still unknown: whether the X-IRA product is unlawful. No court has found the product to be unlawful. "Accusations differ from proof; business executives are not charged with 'knowing' the truth of whatever any public official anywhere in the world may assert." Higginbotham v. Baxter Int'l Inc., 495 F.3d 753, __, (7th Cir. July 27, 2007). Plaintiff's Complaint regarding the X-IRA product must, therefore, be dismissed because any inference of fraudulent intent is less likely than other reasonable nonculpable explanations for the Company's conduct. See Tellabs, 127 S. Ct. at 2504-05.

### 3. Restatement

Plaintiffs attempt to plead scienter by pointing to a number of statements by confidential informants to suggest the Company knew it was misstating its financial results well before the Restatement was announced in February of 2006. However, the informants' statements merely show the Company knew it had problems involving its corporate tax accounting controls, problems it repeatedly disclosed to investors beginning in July 2004. While the Company took almost two years to complete its investigation and restate previous financial results, it also continuously warned investors throughout this period that weaknesses existed, that "corrective action was undertaken," and that "efforts to strengthen financial and internal controls continue." Defendants' Ex. A. at 65. The Company also specifically cautioned in its July 2005 10-K that "there is more than remote likelihood that a material misstatement of the Company's annual or interim financial statements will not be prevented or detected by its internal control over financial reporting." Defendants' Ex. F. at 43. The slow pace of the investigation,

therefore, does not suggest knowledge, or even reckless indifference to the truth, that the financial statements were materially false. Rather, the fact of the investigation, especially because it was undertaken with the help of an independent auditor, negates an inference of an intent to deceive the investing public. See Higginbotham, 495 F.3d at __ ("Knowing enough to launch an investigation . . . is a very great distance from convincing proof of intent to deceive.").

### C. Loss Causation

Defendants argue that Plaintiff has failed to show loss causation with respect to its RAL and X-IRA fraud claims. Because the Court has found Plaintiff has not adequately alleged other elements of these claims, the Court need not reach the issue of loss causation.

### D. Individual Defendants

Plaintiff seeks to impose securities fraud liability, not only on the Company, but also on Ernst, Trubeck, and Yabuki, individually. To adequately state a claim, however, Plaintiff must still comply with the PSLRA's particularized pleading requirements. Kushner, 317 F.3d at 827-28 ("Mere allegations of fraud are insufficient. Rote allegations that the defendants knowingly made false statements of material fact fail to satisfy the heightened pleading standard of the Reform Act.") (quotations omitted). Because Plaintiff has failed to plead scienter with particularity in any respect, it has failed to do so as to the individual defendants as well.

*(2) Section 20(a) of the Securities Exchange Act*

Defendants contend that Plaintiff's control person claims against the three Individual Defendants under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) also fail. Section 20(a) provides for the imposition of liability for violations of Section 10(b) and Rule 10b-5 on individuals found to be "control persons" of the primary violators. See Farley v. Henson, 11 F.3d 827, 835 (8th Cir. 1993). A control person claim is

11

derivative of other 1934 Act claims; thus, "'without an underlying violation of the 1934 Act or any rule or regulation promulgated under its authority [a plaintiff] cannot state a claim under Section 20[(a)].'" Boyer v. Kruger, No. 8CV96-00495, 1998 WL 35177818 (D. Neb. 1998) (quoting Deviries v. Prudential-Bache Secs., Inc., 805 F.2d 326, 329 (8th Cir. 1986). Because Plaintiff failed to plead a primary violation of the securities laws, Plaintiff's control person claims fail as well.

*(3) Leave to Amend*

Plaintiff asks that it be permitted to amend the Complaint. Opp'n at 40 n.16. Under Rule 15 of the Federal Rules of Civil Procedure, leave to amend should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a). "'However, futility constitutes a valid reason for denial of a motion to amend.'" K-tel, 300 F.3d at 899-900 (quoting Knapp v. Hanson, 183 F.3d 786, 790 (8th Cir. 1999). No amount of repleading will help Plaintiff state a claim with respect to its RAL allegations because the public information available to Plaintiff disclosing the Company's litigation risk keeps any omission by the Company from being material. See White v. H&R Block, Inc., No. 02 Civ. 8965 (MBM), 2004 WL 1698628 at *14 (S.D.N.Y. July 28, 2004). Likewise, Plaintiff will not be able to state a claim with respect to its X-IRA allegations because it cannot allege the Company knew its product was illegal when the status of the product's legality has not even been determined. At this time Plaintiff has also failed to adequately allege the Company knew it was releasing false financial results as they were being released. However, Plaintiff will be given leave to amend its Complaint regarding the Restatement of the Company's financials. The Court will give Plaintiff another chance to demonstrate (with more than conclusory allegations) that the Company knew, not just that it had internal control weaknesses, but that it was releasing materially false financial information as a result.[4]

---

[4] Plaintiff is additionally instructed to consider the diminished value of confidential informants in establishing scienter. See Higginbotham, 495 F.3d at __ ("One upshot of the approach that Tellabs announced is that we must discount allegations that the complaint attributes to five 'confidential witnesses' . . . . It is hard to see how information from anonymous sources could be deemed 'compelling' or how we could take account

12

## IV. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Lead Plaintiff's Consolidated Class Action Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure is granted. Plaintiff will be given twenty days to amend its Complaint, only with respect to its claims regarding the Restatement of the Company's financial statements.

IT IS SO ORDERED.

Date: October 4, 2007

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT

---

of plausible opposing inferences. Perhaps these confidential sources have axes to grind. Perhaps they are lying. Perhaps they don't even exist."). Tellabs requires courts to weigh the persuasiveness of a plaintiff's favored inference against other plausible inferences. Plaintiff's reliance on confidential informants makes this comparison difficult.