IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE H&R BLOCK SECURITIES LITIGATION | ) ) ) | Case No. 06-0236-CV-W-ODS |

ORDER AND OPINION GRANTING DEFENDANTS' MOTION TO DISMISS

Pending is Defendants' Motion to Dismiss Lead Plaintiff's First Amended Consolidated Class Action Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure (Doc. # 104). For the following reasons, the motion is GRANTED.

I. BACKGROUND

In the Amended Consolidated Complaint ("Amended Complaint" or "Am. Compl."), Lead Plaintiff Horizon Asset Management Inc. ("Plaintiff") alleges that between February 24, 2004, and February 23, 2006 (the "Class Period"), Defendant H&R Block, Inc. ("Block" or the "Company") and Defendants Mark A. Ernst and William L. Trubeck (the "Individual Defendants" and, together with Block, the "Defendants") violated section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 of the Securities Exchange Commission. The Amended Complaint also alleges the Individual Defendants, officers and directors of the Company, were "controlling persons" under section 20(a) of the 1934 Act, and are therefore derivatively liable for the Company's fraudulent acts. Am. Compl. ¶ 1.

On October 4, 2007, this Court granted Defendants' Motion to Dismiss Lead Plaintiff's Consolidated Class Action Complaint ("Complaint" or "Compl.") (Doc. # 98). Plaintiff's Complaint alleged that Defendants[1] misled the Company's public investors by disseminating a series of materially false and misleading statements concerning the

---

[1] The Complaint named Jeffery W. Yabuki as an additional individual Defendant; however, he has not been named in the Amended Complaint.

Company's revenues, earnings, profitability, and financial condition.

More specifically, the Complaint stated that (1) the Company falsely attributed its success to legitimate business practices when, in fact, it engaged in deceptive consumer practices by offering such programs as the Express IRA plan ("X-IRA") and the Refund Anticipation Loan ("RAL") program; (2) the Company derived substantial revenue from these improper practices, thereby artificially inflating its reported earnings; (3) the Company improperly accounted for its effective income tax rate requiring a restatement of reported financial results (the "Restatement"); (4) the Company lacked a system of safeguards and procedural controls such that investors could rely upon its reported and announced financial statements and results of operations; and (5) as a consequence of the foregoing, the Company's financial results were materially overstated at all relevant times. Compl. ¶ 2.

The Court granted Defendants' Motion to Dismiss the Complaint for failure to state a claim. The Court held that Plaintiff had not, and could not plead a material omission regarding the RAL program because the public had been made well-aware of the litigation risk surrounding this product.[2] Likewise, the Court held that Plaintiff had not, and could not plead scienter regarding the X-IRA plan because the Company could not have known the product was illegal when its legality had not yet been determined. Finally, the Court held that Plaintiff had failed to adequately plead scienter regarding the Company's improper accounting of its effective income tax rate, a problem which eventually led to the Restatement of the Company's financials. The Court held that Plaintiff had not adequately alleged that the Company knew it was releasing false financial results at the time they were being released.

The Court, however, granted Plaintiff leave to amend its Complaint regarding the Restatement of the Company's financials, stating that Plaintiff's Amended Complaint must demonstrate (with more than conclusory allegations) that the Company knew, not just that it had internal control weaknesses, but that it was releasing materially false

---

[2] The Court also held that Plaintiff had not adequately pled scienter regarding the RAL product.

financial information as a result. Plaintiff was additionally instructed to consider the diminished value of confidential informants in establishing scienter after the Supreme Court's recent decision in Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499 (2007). See Higginbotham v. Baxter Int'l Inc., 495 F.3d 753, 757-58 (7th Cir. 2007) ("One upshot of the approach that Tellabs announced is that we must discount allegations that the complaint attributes to five 'confidential witnesses' . . . . It is hard to see how information from anonymous sources could be deemed 'compelling' or how we could take account of plausible opposing inferences. Perhaps these confidential sources have axes to grind. Perhaps they are lying. Perhaps they don't even exist.").

On November 19, 2007, Plaintiff filed its First Amended Consolidated Class Action Complaint. Plaintiff again alleges the Company committed securities fraud when it misstated its financial results in certain periods prior to 2006. Am. Compl. ¶ 3. The falsity of the Company's financial reports was revealed, Plaintiff alleges, on February 23, 2006, when the Company restated its financials statements for the year ended June 30, 2004, the year ended June 30, 2005, and the quarterly periods for fiscal year 2006. The need for the Restatement was premised upon material weaknesses related to the corporate tax accounting function, resulting in errors in determining the Company's state effective income tax rate. These errors caused a cumulative understatement of the Company's state income tax liability.

Now pending before the Court is Defendants' Motion to Dismiss the Amended Complaint. The only issue before the Court is whether Plaintiff has adequately pled scienter regarding the Company's improper accounting of its effective income tax rate and subsequent Restatement of its financial statements.

## II. STANDARD

A motion to dismiss for failure to state a claim should be granted when it appears that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In ruling on a motion to dismiss, the Court is required to view

3

the facts alleged in the complaint in the light most favorable to the plaintiff.

The Court is limited to a review of the complaint; the only items outside the complaint that may be considered without converting the motion to one seeking relief pursuant to Rule 56 of the Federal Rules of Civil Procedure are (1) exhibits attached to the complaint, and (2) materials necessarily embraced by the complaint.[3] Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698 (8th Cir. 2003).

The Private Securities Litigation Reform Act of 1995 ("PSLRA") "dictates a modified analysis due to its special heightened pleading rules." Kushner v. Beverly Enter., Inc., 317 F.3d 820, 824 (8th Cir. 2003). The purpose of the heightened pleading standard is to eliminate abusive securities litigation and put an end to the practice of pleading "fraud by hindsight." In re Vantive Corp. Secs. Litig., 283 F.3d 1079, 1084-85 (9th Cir. 2002). The PSLRA requires plaintiffs "to specify each misleading statement or omission and specify why the statement or omission was misleading." Id. at 326 (citing 15 U.S.C. § 78u-4(b)(1)). The complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); see also Kushner, 317 F.3d at 826 (citation omitted). Finally, the court must "disregard 'catch-all' or 'blanket' assertions that do not live up to the particularity requirements." Id. at 824 (quoting Florida State Bd. of Admin. v. Green Tree Fin. Corp., 270 F.3d 645, 660 (8th Cir. 2001)).

## III. DISCUSSION

*(1) Section 10(b) of the Securities Exchange Act*

Defendants contend that Plaintiff's Amended Complaint suffers from the same short-fall as the Complaint by failing to plead facts giving rise to a strong inference that

---

[3] The Court will take judicial notice of the relevant pages of the Company's Form 10-K/A for the year ended April 30, 2005, which was filed with the Securities and Exchange Commission on July 29, 2005. See Florida State Bd. of Admin. v. Green Tree Fin. Corp., 270 F.3d 645, 663 (8th Cir. 2001) (stating that a court may take judicial notice of SEC filings on a motion to dismiss).

4

the Defendants acted with scienter when accounting errors caused inaccurate financial statements to be released. The recent Supreme Court case, Tellabs, clarified the "exacting" requirement of pleading scienter. 127 S. Ct. 2499, 2504 (2007). The Court stated "[i]t does not suffice that a reasonable factfinder plausibly could infer from the complaint's allegations the requisite state of mind." Id. Rather, under the PSLRA, a court evaluating inferences of scienter must compare "not only inferences urged by the plaintiff," but also competing inferences that can be rationally drawn. Id. Thus, even a plausible inference of fraudulent intent will not survive a motion to dismiss if it is less convincing than other nonfraudulent explanations for the defendant's acts. Id.

Thus, to meet the "strong inference" standard, "an inference of scienter must be more than merely plausible or reasonable–it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Id. at 2504-05. The standard clarified in Tellabs is not significantly different than preexisting Eighth Circuit case law. See Elam v. Neidorff, 2007 WL 1880747 at *4 (E.D. Mo. June 29, 2007). For example, in Green Tree, the court cited a stricter standard, requiring an inference of scienter to be the "most plausible of competing inferences," 270 F.3d at 661, but this heightened standard was not specifically adopted as Eighth Circuit law. See In re K-tel Intern., Inc. Sec. Litig., 300 F.3d 881, 889 n.6 (8th Cir. 2002). Therefore, while the Court must be mindful of Tellabs, prior Eighth Circuit cases may still be relied upon.

In Kushner, the Eighth Circuit approvingly noted that other circuits have found that scienter was sufficiently pled where the complaint alleges that the defendants (1) knew facts or had access to information that suggested their public statements were not accurate; (2) engaged in deliberately illegal behavior; (3) benefitted in a concrete personal way from the alleged fraud; or (4) failed to verify information they had a duty to monitor. 317 F.2d at 827 (citing Novak v. Kasaks, 216 F.3d 300, 311 (2d Cir.), cert. denied, 531 U.S. 1012 (2000)).

Scienter is not demonstrated by negligent conduct, but it may be demonstrated by recklessness. Recklessness consists of "unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of

5

misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." Green Tree, 270 F.3d at 654 (quotation omitted). Violations of GAAP combined with corresponding evidence of fraudulent intent may be sufficient. Ferris, Baker Watts, Inc. v. Ernst & Young, LLP, 395 F.3d 851, 855 (8th Cir. 2005). Additionally, "recklessness is shown where alleged facts demonstrate that the defendants failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud." Kushner, 317 F.3d at 828 (8th Cir. 2003).

The Plaintiff in this case has attempted to establish the requisite showing of scienter by pointing to statements from four confidential sources. The value of statements by confidential informants in establishing scienter has been questioned following the Tellabs decision. In Higginbotham, the Seventh Circuit suggested that the standard established in Tellabs made reliance on confidential sources problematic. 495 F.3d at 757-58. The court stated that "[i]t is hard to see how information from anonymous sources could be deemed 'compelling' or how we could take account of plausible opposing inferences." Id. at 757. However, in that case the complaint was based almost entirely on information from vaguely described witnesses. See id.[4] On the other hand, in Green Tree, the Eighth Circuit held that the particularity requirements of the PSLRA did not mandate naming sources. 270 F.3d at 667-68. Rather, the court held that the confidential informants' allegations were sufficient because the complaint "recite[d] details of a particular conversation with a particular person," suggesting that the informant had personal knowledge of the facts alleged. Id. at 668.

Accordingly, the issue is not whether sources are named. A plaintiff must establish that the informants' statements can be relied upon. See, e.g., In re NVE Corp. Sec. Litig., 2007 WL 1994024, at *5 (D. Minn. Jul. 3, 2007). "In order to determine if the

---

[4] Additionally, on remand from the Supreme Court, the Seventh Circuit in Tellabs held that the use of confidential informants is permissible when they are properly described and "were in a position to know at first hand the facts to which they are prepared to testify. . . ." ___ F.3d ___, 2008 WL 151180 at *17-18, No. 04-1687 (7th Cir. Jan. 17, 2008).

6

particularity requirement is met, a court must conduct 'an examination of the detail provided by the confidential sources, the sources' basis of knowledge, the reliability of the sources, the corroborative nature of other facts alleged, including from other sources, the coherence and plausibility of the allegations, and similar indicia." Id. (quoting California Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 147 (3d Cir. 2004)).

Plaintiff's Complaint attempted to plead scienter by pointing to a number of statements by confidential informants to suggest the Company knew it had problems in its accounting for income taxes well before the Restatement was announced in February of 2006. Even assuming the confidential informants' statements were reliable and true, however, the Court stated that the informants' statements merely showed that the Company knew it had problems involving its corporate tax accounting controls–problems it repeatedly disclosed to investors beginning in July 2004. Specifically, the Court stated that "[w]hile the Company took almost two years to complete its investigation and restate previous financial results, it also continuously warned investors throughout this period that weaknesses existed, that 'corrective action was undertaken,' and that 'efforts to strengthen financial and internal controls continue.'" Order at 10.[5]

The Court noted that the Company had specifically cautioned in its July 2005 10-K that "there is more than remote likelihood that a material misstatement of the Company's annual or interim financial statements will not be prevented or detected by its internal control over financial reporting." The Court held that the slow pace of the

---

[5] Plaintiff's Amended Complaint contains additional allegations that the Company's statements regarding its efforts to remediate its control weaknesses caused investors, and even market analysts, to conclude that the internal control weaknesses had been fully remedied prior to the Restatement. Am. Compl. ¶¶ 57-69. However, the Court still concludes that the Company continuously warned that its efforts to fix the problems were ongoing. Additionally, the Company did not have a duty to correct the market analysts' errors. See Raab v. General Physics Corp., 4 F.3d 286, 288 (4th Cir. 1993) ("The securities laws require [the company] to speak truthfully to investors; they do not require the company to police statements made by third parties for inaccuracies, even if the third party attributes the statements to [the company].").

7

investigation, therefore, did not suggest knowledge of, or even reckless indifference to, the financial statements' material falsity. Rather, the fact of the investigation, especially because it was undertaken with the help of an independent auditor, negated an inference of an intent to deceive the investing public. See Higginbotham, 495 F.3d at 758 ("Knowing enough to launch an investigation . . . is a very great distance from convincing proof of intent to deceive.").

In answering the Court's charge to "demonstrate (with more than conclusory allegations) that the Company knew, not just that it had internal control weaknesses, but that it was releasing materially false financial information as a result," Plaintiff has included in its Amended Complaint only one allegation of consequence that the Court did not already reject:

> [T]he former Internal Audit Manager was directly informed by his manager Brad Campbell and also Jeff Brown, who worked in accounting, that senior management, including Ernst and Trubeck, knew and had spoken of the fact, as of September or October of 2005, that a further restatement of the Company's financial statements with respect to the misstated tax accruals would be necessary, although they did not yet know the exact amount.

Am. Compl. ¶ 66. First, even if Defendants knew as of September or October of 2005, after a months long investigation, that some sort of a restatement would be necessary, that does not give rise to a strong inference that Defendants were intentionally, or even recklessly, releasing false financial information before that time. Rather, it is more likely that their investigation (an on-going investigation that the public had been repeatedly reminded of) had begun to reveal this need.

The issue, then, turns to whether this new allegation creates a strong inference that Defendants acted with an intent to mislead the public in its December 12, 2005 financial statement. The new allegation is made by a confidential informant; however, Plaintiff has provided details of this informant including his length of employment with the Company, his responsibilities, that he reported directly to Bradley Campbell (the former Assistant Vice President, Internal Audit) and later to Defendant Trubeck. However, while he may have been in a position to learn the knowledge of the Defendants, here the informant's statement is not based on personal knowledge. Rather, the informant was told by Bradley Campbell of Ernst's and Trubeck's

knowledge. Additionally, it is not clear whether Ernst and Trubeck made this statement directly to Bradley Campbell, or whether Bradley Campbell heard it from someone else.

Additionally, even if the statement is true it does not suggest that Ernst and Trubeck planned to hide this information from the public. Rather, the non-specific knowledge that the misstated tax accruals would require some sort of restatement was still under investigation. The December 12, 2005 financial statement divulged the continuing nature of this investigation: "in our efforts to remediate the material weakness management has engaged a third-party firm to assist us in performing a comprehensive evaluation of the corporate tax function, including resource requirements. We expect this third-party evaluation to be completed by December 31, 2005." See Form 10-Q, filed December 12, 2005 at 42. Likewise, if Defendants did not know the amounts of the needed restatement, the Court cannot conclude that Defendants knew the December 12, 2005 financials were *materially* false.

Again, then, the Court is left with statements by confidential informants suggesting that Defendants knew they had problems involving corporate tax accounting controls. The Company repeatedly disclosed the problems to investors beginning in July 2004. The Company continued to evaluate and work towards remedying the problems, including by hiring the help of an independent third-party. The culmination of the investigation led to a Restatement. Thus, Plaintiff has still not pled facts giving rise to a strong inference that Defendants acted with an intent to deceive the investing public by releasing incorrect financial statements.

*(2) Section 20(a) of the Securities Exchange Act*

Plaintiff's control person claims against the two Individual Defendants under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) also fail. Section 20(a) provides for the imposition of liability for violations of Section 10(b) and Rule 10b-5 on individuals found to be "control persons" of the primary violators. See Farley v. Henson, 11 F.3d 827, 835 (8th Cir. 1993). A control person claim is derivative of other 1934 Act claims; thus, "'without an underlying violation of the 1934 Act or any rule or regulation promulgated under its authority [a plaintiff] cannot state a claim under Section 20[(a)].'"

9

Boyer v. Kruger, No. 8CV96-00495, 1998 WL 35177818 (D. Neb. 1998) (quoting Deviries v. Prudential-Bache Secs., Inc., 805 F.2d 326, 329 (8th Cir. 1986). Because Plaintiff failed to plead a primary violation of the securities laws, Plaintiff's control person claims fail as well.

IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Lead Plaintiff's Amended Consolidated Class Action Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure is granted.

IT IS SO ORDERED.

Date: February 19, 2008

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT